# R.Z. v. RK Hosp., LLC

United States District Court for the District of Colorado

August 13, 2026, Decided; August 13, 2026, Filed

Civil Action No. 25-cv-2568-WJM-MDB

**Reporter**
2026 U.S. Dist. LEXIS 181472 *; 2026 LX 476075; 2026 WL 2350090

R.Z., Plaintiff, v. RK Hospitality, LLC, et al., Defendants.

**Counsel:** **[*1]** For R. Z., Plaintiff: Kevin N. Colquitt, Sbaiti & Company PLLC, Dallas, TX; Matthew B. Sicheri, Sbaiti & Company NJ LLC, Newark, NJ; Robert Christopher Cowan, R. Christopher Cowan Esq., Ltd. Co, Durango, CO.

For RK Hospitality, LLC, doing business as, Travel Lodge by Wyndham, Defendant: Meaghan Elaine Fischer, Wegener Lane & Evans PC, Grand Junction, CO.

For Msoiur Rahman, doing business as, Travel Lodge by Wyndham, Defendant: Lindsey Warren Jay, Paul H. Sukenik, Overturf McGath & Hull, P.C., Denver, CO.

For Rileshkumar R Patel, doing business as, Days Inn, Defendant: Andrew Keith Lavin, Gordon & Rees LLP, Denver, CO; Sara Hope Kiridly, Trevor Schrader, Lewis Brisbois Bisgaard & Smith LLP, Denver, CO; Stephanie Esther Boutsicaris, Gordon Rees Scully Mansukhani LLP, Denver, CO.

For Haiden LLC, doing business as, America's Best Value Inn, Defendant: Amy Lilien Twohey, Johnson Bakken Smith PC, Centennial, CO; Erica Olson Payne, Johnson Bakken Smith PC, Englewood, CO.

For Days Inn Worldwide Inc, Wyndham Hotels & Resorts, Inc, ABC Corporation 1-100; and John Does 1-100, Defendants: Kyle Thomas Orne, DLA Piper LLP (US), Phoenix, AZ; Mallory Biblo, DLA Piper US LLP, Dallas, TX.

**Judges:** William J. Martínez, **[*2]** Senior United States District Judge.

**Opinion by:** William J. Martínez

## Opinion

**ORDER GRANTING IN PART AND DENYING IN PART WYNDHAM FRANCHISOR DEFENDANTS' AND DEFENDANT RK HOSPITALITY'S MOTIONS TO DISMISS AND GRANTING DEFENDANT PATEL'S MOTION TO DISMISS**

Before the Court is Defendants Days Inns Worldwide, Inc. and Wyndham Hotels & Resorts Inc.'s ("Wyndham Franchisor Defendants'") Motion to Dismiss (ECF No. 53), Defendant Rileshkumar R. Patel d/b/a Days Inn's ("Patel's") Motion to Dismiss Plaintiff's Second Cause of Action (ECF No. 67), and Defendant RK Hospitality, LLC d/b/a Travel Lodge by Wyndham's ("RK Hospitality's") Motion to Dismiss (ECF No. 112) ("Motions"). The Motions have been fully briefed and are ripe for decision. (ECF Nos. 75, 80, 81, 82, 113, 117.)

For the following reasons, the Court grants in part and denies in part the Wyndham Franchisor Defendants' and RK Hospitality's Motions and grants Defendant Patel's Motion.

### I. BACKGROUND[1]

[1] The Background section is drawn from the Complaint. (ECF No. 1.) The Court assumes the allegations in the Complaint to be true for the purpose of deciding the Motions. *See* ***Ridge at Red Hawk, L.L.C.***

This lawsuit arises from Plaintiff's allegations that she fell victim to a sex trafficking scheme operating out of various hotels in Colorado Springs in 2014 and 2015. (ECF No. 1 at ¶ 5 n.1).

Plaintiff avers that, in the spring of 2014, she was homeless and checked into **[*3]** Value Inn & Suites ("Value Inn"). (*Id.* at ¶ 20.) There, she met a woman who invited Plaintiff to visit her cottage near Value Inn after learning about Plaintiff's financial struggles. (*Id.* at ¶¶ 21-23.) The woman introduced Plaintiff to B.S., who offered to help Plaintiff with her financial situation. (*Id.* at ¶¶ 24-26.)

B.S. and Plaintiff agreed to an arrangement where she went on dates with men to earn money to get back on her feet. (*Id.* at ¶ 26.) Under this arrangement, "B.S. forced Plaintiff to live in a string of hotels, where he required her to sleep with multiple men a day in exchange for money." (*Id.* at ¶ 31.) Plaintiff was not the only victim of B.S.'s operation. (*See id.* at ¶¶ 33, 106.)

Plaintiff alleges that "B.S. would circulate his victims among different hotels each month." (*Id.* at ¶ 58.) Plaintiff stayed at various hotels during this time, including Value Inn, Days Inn by Wyndham ("Days Inn"), the Travel Lodge by Wyndham ("Travel Lodge"), and America's Best Value Inn ("America's Best"). (*Id.* at ¶¶ 64, 102, 133, 167.) At these hotels, B.S. simultaneously rented multiple room blocks. (*Id.* at ¶¶ 67, 71, 106, 137, 171, 173.) At the hotels, B.S. would be armed and standing guard **[*4]** outside of the rooms while on hotel property. (*Id.* at ¶¶ 109(b), 141(b).) He "was always armed with both a gun and blackjack or club." (*Id.* at ¶ 30.)

For each encounter, unregistered male visitors would enter Plaintiff's and the other victims' rooms one by one throughout the day "in full view of the hotel's cameras." (*Id.* at ¶¶ 109(f), 141(f).) For instance, at Travel Lodge, the visitors would walk past the front desk or through the hotel's back door when it was left unlocked, doing so "in full view of the hotel's cameras." (*Id.* at ¶ 141(f).) B.S. often collected cash from his customers outside of the victims' rooms in the hotels' hallways. (*Id.* at ¶¶ 109(c), 141(c).)

Plaintiff, B.S., and those in his group stayed at the Days Inn for "a total of approximately 45 days during the period that Plaintiff was trafficked." (*Id.* at ¶ 102.) The Days Inn was owned and operated by Patel and franchised by the Wyndham Franchisor Defendants. (ECF No. 1 at ¶ 103; ECF No. 53 at 3.) At the Days Inn, "on multiple occasions, B.S. arranged with the owner/manager of the hotel to have sex with Plaintiff." (ECF No. 1 at ¶ 108.) "B.S. also forced his other victims to sleep with the owner/manager." (*Id.*)

Whenever **[*5]** Plaintiff was in the hotels' public areas, she was "typically drugged and incapacitated," and she and the other victims were often emaciated. (*Id.* at ¶ 109(g); *see id.* at ¶¶ 109(d), 141(d).) Hotel staff who entered B.S.'s rooms "must have noticed . . . multiple used condoms and wrappers discarded in the trash, bodily fluids on the bedding and towels, and commercial sex and drug paraphernalia." (*Id.* at ¶¶ 109(h), 141(h).)

B.S. also had Plaintiff and his other victims stay at Travel Lodge, which was owned and operated by RK Hospitality and franchised by the Wyndham Franchisor Defendants. (*Id.* at ¶ 134; ECF No. 53 at 3; ECF No. 112 at 2.) At Travel Lodge, B.S. "frequently disciplined the sex trafficking victims on the hotel property and prevented them from leaving." (*Id.* at ¶ 141(b).)

In one instance at Travel Lodge, Plaintiff told B.S. she wanted to leave. (*Id.* at ¶ 139.) In response, he beat her, "g[iving] her a black eye and other visible bruises, and ordered her to isolate herself in her room for two weeks until she healed up." (*Id.* at ¶ 139.) During these two weeks, Plaintiff refused housekeeping and only left her room once to ask for ice from the front desk to apply to her black eye **[*6]** and bruises. (*Id.* at ¶ 140.)

---

***v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)*.**

In August 2015 at America's Best Value Inn, B.S. beat her again. (*Id.* at ¶ 175.) Plaintiff told B.S. that she was leaving. (*Id.*) He then punched her in the nose, sending her off her chair, and he continued beating her, and then strangled her to the point of unconsciousness. (*Id.* at ¶¶ 35, 175.) When Plaintiff awoke, B.S. had left the room. (*Id.* at ¶¶ 36, 176.) She tried to call 911 from her hotel room phone but the phone was not working. (*Id.* at ¶¶ 36, 176.)

Plaintiff went to the hotel front desk and asked the two employees there to call 911. (*Id.* at ¶¶ 36, 176.) They refused, telling her they did not want to "interfere in [B.S.'s] business." (*Id.* (alteration in original).) Plaintiff limped back to her room and hid in the closet for the night. (*Id.* at ¶¶ 37, 177.)

In the morning, Plaintiff went back to the front desk and, this time, a different employee called 911 on her behalf. (*Id.* at ¶¶ 38, 178.) After this incident, Plaintiff stayed in the hospital for three days. (*Id.* at ¶¶ 39, 179.) She stuttered for three months and underwent extensive speech therapy to recover. (*Id.* at ¶¶ 39, 179.) B.S. was eventually arrested and convicted. (*Id.* at ¶¶ 40, 180.)

Ten **[*7]** years later, on August 15, 2025, Plaintiff filed her Complaint. (*Id.* at ¶ 1.) She makes six claims against Defendants. First, Plaintiff alleges Defendants violated the *Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, et seq.* (Count One). Second, she alleges Defendants violated the *Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA"), 18 U.S.C. § 2421A et seq.*, by "promoting or facilitating prostitution and . . . recklessly disregard[ing] sex trafficking of victims" (Count Two). Third, she asserts a state law claim against Defendants under *Colo. Rev. Stat. § 13-21-127* ("Colorado Human Trafficking Statute") (Count Three). Finally, she alleges several state law tort claims against Defendants, including intentional infliction of emotional distress ("IIED") (Count Four), negligence and negligent IIED (Count Five), and negligence (Count Six) (collectively, the "Colorado Tort Claims").

## II. LEGAL STANDARDS

### A. *Rule 12(b)(6)*

Under *Rule 12(b)(6)*, a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. "The court's function on a *Rule 12(b)(6)* motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc., 336 F.3d 1194, 1201 (10th Cir. 2003)* (internal quotation marks omitted).

The *Rule 12(b)(6)* standard requires the Court to "assume the truth **[*8]** of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, 493 F.3d at 1177*. Thus, in ruling on a motion to dismiss under *Rule 12(b)(6)*, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*); *see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*.

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009)* (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.' " *Id.* (quoting *Twombly, 550 U.S. at 556*). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)* (quoting *Twombly,*

550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.' " *Id.* (quoting Twombly, 550 U.S. at 556).

Moreover, "[a] complaint need not anticipate any affirmative defenses that may be raised by the defendant, including **[*9]** the statute of limitations; it is the defendant's burden to plead an affirmative defense." *Bistline v. Parker, 918 F.3d 849, 876 (10th Cir. 2019)* (citing *Fernandez v. Clean House, LLC, 883 F.3d 1296, 1299 (10th Cir. 2018)*); *see* Fed. R. Civ. P. 8(c)(1) (listing statute of limitations as an affirmative defense). "Indeed, it is only proper to dismiss a complaint based on an affirmative defense when the complaint itself admits all the elements of the affirmative defense." *Id.* In other words, when the dates given in the complaint make clear that the right sued upon has been extinguished, statute of limitation questions may be appropriately resolved on a motion to dismiss. *Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)*.

## III. ANALYSIS

The Wyndham Franchisor Defendants and RK Hospitality move to dismiss all of these claims, whereas Patel only moves to dismiss Count Two. The Wyndham Franchisor Defendants and RK Hospitality advance materially the same arguments in favor of dismissal of all of Plaintiffs' claims. Accordingly, the Court considers their arguments in tandem.

The Court will consider Defendants' arguments in favor of dismissal by analyzing them in the context of each of Plaintiff's claims: (A) Count One, her TVPRA claim; (B) Count Two, her FOSTA claim; (C) Count Three, her Colorado Human Trafficking Statute claim; and (D) her Colorado Tort Claims.

### A. Trafficking Victims [*10] Protection Reauthorization Act (Count One)

While the TVPRA is primarily a criminal statute, it creates a civil cause of action for victims of sex trafficking.

To state a claim under the TVPRA, a plaintiff must allege facts from which a reasonable person could infer that a defendant (1) "knowingly benefit[ed], or attempt[ed] or conspire[d] to benefit, financially or by receiving anything of value from" (2) "participation in a venture" (3) which the defendant "knew or should have known has engaged in" sex trafficking. 18 U.S.C. § 1595(a).

A plaintiff who prevails under a TVPRA claim "may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). There is a ten-year statute of limitations for TVPRA claims. 18 U.S.C. § 1595(c).

1. Timeliness

The Wyndham Franchisor Defendants and RK Hospitality argue Plaintiff's TVPRA claim was filed outside the applicable ten-year statute of limitations and is thus untimely. Plaintiff alleges that "this action is timely as to all pleaded occurrences because the claims did not accrue until the last wrongful act . . . ." (ECF No. 1 at ¶ 228.) The Court agrees with Plaintiff.

Generally, "a claim accrues 'when the plaintiff has a complete and present cause of action.' " *Gabelli v. S.E.C., 568 U.S. 442, 448, 133 S. Ct. 1216, 185 L. Ed. 2d 297 (2013)* (quoting *Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)*). But "[b]ecause no federal **[*11]** statutory provision governs how to determine the accrual date, courts look to 'federal rules conforming in general to common-law tort principles.' " *Herrera v. City of Espanola, 32 F.4th 980, 990 (10th Cir. 2022)* (quoting *Wallace, 549 U.S. at 388*).

"[T]he continuing violation doctrine is a 'tort principle' that 'is a general principle of federal common law.' " *Id. at 993* (quoting *DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018)*). The continuing violation doctrine was developed in the

context of employment discrimination claims brought under *Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.* *See* *Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)*. Although the continuing violation doctrine typically arises in hostile work environment claims, the Tenth Circuit has held that the continuing violation doctrine applies to certain contexts outside of employment discrimination, such as claims under *42 U.S.C. § 1983*. *See, e.g.*, *Herrera, 32 F.4th at 994 (10th Cir. 2022)* (continuing violation doctrine is available to *§ 1983* litigants).

Under the continuing violation doctrine, a plaintiff may assert a claim based on events that occurred outside the statute of limitations "if such incidents are sufficiently related and thereby constitute a continuing pattern" of civil rights violations. *Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)*. The continuing violation doctrine "is triggered 'by continual unlawful acts, not by continual ill effects from the original violation.' " *Mata v. Anderson, 635 F.3d 1250, 1253 (10th Cir. 2011)* (quoting *Parkhurst v. Lampert, 264 Fed. Appx. 748, 749 (10th Cir. 2008)*). "So at the pleadings stage, the plaintiff must allege unlawful **[*12]** acts or omissions reaching into the limitations period in order to rely on the continuing violations doctrine." *Vasquez-Garcia v. Centurion, LLC, 172 F.4th 1150, 1162 (10th Cir. 2026)*.

By contrast, courts do not apply the continuing violations doctrine when the conduct at issue involves separate and actionable discrete acts. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' " *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)*.

With this in mind, the Court holds that the continuing violation doctrine is applicable to claims brought under the TVPRA. The Court does so for several reasons.

First, the U.S. Court of Appeals for the Tenth Circuit's decision in *Herrera v. City of Espanola* counsels the Court should interpret the TVPRA's silence on the continuing violation doctrine in favor of applying it. Although *Herrera* did not speak to the continuing violation doctrine in the context of the TVPRA, the analytical framework established there is helpful in resolving this case. There, a group of homeowners sued the City of Espanola, New Mexico, under *42 U.S.C. § 1983* and the New Mexico Tort Claims Act because the city refused to recommence water services **[*13]** to the plaintiffs until someone paid the previous homeowner's water and sewer bill. *Herrera, 32 F.4th at 985*. The plaintiffs "expressly relied on the continuing violation doctrine to extend the [three-year] limitations period" governing their *section 1983* claim. *Id. at 985-86*. They argued that the limitations period had not expired because the city repeatedly denied their requests for water service in the three years between the time the city initially refused to restart the water services and the time they filed their complaint. *Id. at 986*.

The Tenth Circuit held that "[w]hile the continuing violation doctrine is available in the *§ 1983* context, it does not save Appellants' claims against the City because their allegations do not support a series of individually unactionable occurrences, which when combined, make out a single alleged violation." *Id. at 1002*.

In determining that the continuing violation doctrine applied to *section 1983* claims, the Tenth Circuit observed that "no language in *§ 1983* or any other provision governing the commencement of actions under *§ 1983* speaks directly to the applicability of the continuing violation doctrine, no less displaces the doctrine." *Id. at 994*. Because of *section 1983*'s silence on the doctrine and *42 U.S.C. § 1988(a)*'s "preference *for* application of the common law where the statutes **[*14]** governing civil rights actions are silent . . . . it follows that the continuing violation doctrine, as a

general principle of the federal common law, is available to a § 1983 litigant." *Id.*

Similarly, the TVPRA is silent as to the applicability of the continuing violation doctrine to claims brought pursuant to its provisions. *See* 18 U.S.C. § 1595(c). "To displace a generally applicable principle of federal common law, Congress must speak to the issue when crafting the pertinent legislation." *Herrera, 32 F.4th at 994*. Nothing in the TVPRA displaces the federal common law continuing violation doctrine, so at this point of the analysis, nothing precludes applying the continuing violation doctrine to the TVPRA.

Second, most courts that have considered this issue have held that TVPRA claims are subject to the continuing violation doctrine because TVPRA violations are continuing torts. Thus, "a single act occurring within the limitations period will preserve a claim based on all acts that were part of a single pattern." *Schneider v. Osg, LLC, No. 22-CV-7686 (AMD) (VMS), 2024 U.S. Dist. LEXIS 55467, 2024 WL 1308690, at *5 (E.D.N.Y. Mar. 27, 2024)* (collecting cases); *see* Doe (J.R.L.) v. Hilton Domestic Operating Company Inc., 810 F. Supp. 3d 194, 200 (D. Mass. 2025); Doe 3 v. Indyke, 801 F. Supp. 3d 200, 208 (S.D.N.Y. 2025); Levin v. Sarah Lawrence Coll., 747 F. Supp. 3d 645, 670 (S.D.N.Y. 2024) ("TVPRA claims accrue on the last date the wrongful conduct occurs."); *Ali v. Khan, 336 F. Supp. 3d 901, 910 (N.D. Ill. 2018). But see Christina T. v. Bellagio, LLC, 806 F. Supp. 3d 1185, 1193 (D. Nev. 2025)* (continuing violation doctrine does not apply to TVPRA claims); *H.G. v. Inter-Continental Hotels Corp., 489 F. Supp. 3d 697, 710 (E.D. Mich. 2020)* (plaintiff's TVPRA claims for violations from **[*15]** 2003 to 2008 were time-barred and she could only pursue claims for violations from December 2009 onward because she filed her complaint in December 2019).

By its very nature, human trafficking involves repeated conduct. Under the TVPRA, sex trafficking occurs when someone "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person." *18 U.S.C. § 1591(a)(1)*. These methods of sex trafficking are all continuous processes that generally do not occur on a singular basis. Similarly, what is key here is that the TVPRA involves "participation in a venture." *18 U.S.C. § 1595(a)*. The TVPRA does not define "participation in a venture" in the civil context.[2] "When a term goes undefined in a statute, we give the term its ordinary meaning." *Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. 560, 566, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012)*. In its plain meaning, to participate means "to take part" or "to have a part or share in something." *Participate*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/participate. A venture is "an undertaking involving chance, risk, or danger," especially "a speculative business enterprise." *Venture*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/venture. To construe "participation in a **[*16]** venture" as a discrete act defies common sense. Because participation involves taking part and a venture is an "undertaking," which are continuous and recurring processes, it follows that "participation in a venture" under the TVPRA must be a continuing act. A defendant does not "participate in a venture" in one discrete, isolated incident, stop at another, and do so again in another isolated incident. Instead, participation in a venture, let alone one involving sex trafficking, forms the baseline for one continuing violation. From this it is clear sex trafficking can occur over the course of days, months, or as in Plaintiff's case, over a year.

Recall that Plaintiff was trafficked from spring 2014 until August 2015 and that she brought this suit ten years later, in August 2025. (ECF No. 1 at ¶ 5 n.1.) Thus, although the allegations before August 2015 fall outside of the ten-year statute of

---

[2] It does, however, define "participation in a venture" in the criminal context to mean "knowingly assisting, supporting, or facilitating a violation of *subsection (a)(1)*." *18 U.S.C. § 1591(e)(4)*.

limitations, the fact that the allegations from August 2015 fall within the ten-year statute of limitations means that Count One may proceed under the continuing violation doctrine. Each instance of Plaintiff's factual allegations thus formed the broader series of events of the sex trafficking, and **[*17]** more broadly, her allegation that Defendants violated the TVPRA as participants. Plaintiff finally escaped B.S.'s clutches after he beat her at Travel Lodge and her second attempt to have a hotel employee call 911 on her behalf succeeded. Under the TVPRA, "[w]hether and when a 'victim escapes from the grasp of their traffickers' does not control accrual of a TVP[R]A claim." *Doe 3, 801 F. Supp. 3d at 208*.

In sum, the Court finds that Plaintiff's allegations "support a series of individually unactionable occurrences, which when combined, make out a single alleged violation." *Herrera, 32 F.4th at 1002*. As such, Count One did not accrue until August 2015, the last date of the wrongful conduct. Concluding that Count One is not time-barred, the Court now proceeds to determine whether Plaintiff has stated a TVPRA claim.

2. TVPRA Allegations

To review, a well-pleaded TVPRA claim consists of three key elements against a defendant: (1) benefit, (2) participation in a sex trafficking venture, and (3) actual or constructive knowledge. See *18 U.S.C. § 1595(a)*. Plaintiff's Complaint establishes all three elements against the Wyndham Franchisor Defendants and RK Hospitality.

As to the first element, RK Hospitality concedes "[f]or purposes of this motion only . . . that the **[*18]** allegations suffice to meet the knowingly benefited element from the trafficking by booking rooms . . . ." (ECF No. 112 at 4.) Likewise, the Wyndham Franchisor Defendants only argue that dismissal is appropriate based on the second and third elements. (*See* ECF No. 53 at 7.)

Plaintiff needs to show that Defendants "knowingly benefit[ed] financially or by receiving anything of value." *18 U.S.C. 1595(a)*. Renting a room "constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the *[section] 1595(a)* standard." *M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019)*. Each of the hotels rented multiple room blocks out to B.S. The hotels "derived fees and revenue tied to Plaintiff's trafficking" from those rentals, "as well as brand value" and, therefore, have knowingly benefited or received something of value. (ECF No. 75 at 5.) *See, e.g., J.L. v. Best Western Int'l, Inc., 521 F. Supp. 3d 1048, 1061 (D. Colo. 2021)* (finding that plaintiff's theory that hotel franchisor received percentage of room revenue generated by hotel, including room rented by trafficker, was sufficient to allege knowing benefit under *§ 1595*).

Regarding the participation element, Plaintiff alleges the Wyndham Franchisor Defendants provided training and supervision to franchisees, and observed "constant physical abuse in the presence of hotel **[*19]** employees at the franchisee locations, . . . while continually profiting from B.S.'s sex trafficking activity from the ongoing venture." (ECF No. 1 at ¶ 119-20.) Plaintiff argues that the Wyndham Franchisor Defendants had "a continuous business relationship with B.S.," had "direct involvement" with the Days Inn's owner or manager, "and robust franchisor control mechanism such as brand standards, mandatory training, reservation and payment systems, inspection-and-enforcement rights, monitoring of complaints and reviews, and reporting pipelines." (ECF No. 75 at 5-6; *see* ECF No. 1 at ¶¶ 106-32, 142-66.) That level of control by the Wyndham Franchisor Defendants demonstrates participation. *See Doe (S.C.) v. Sheraton, LLC, No. 23CV00451 KG/JMR, 2024 U.S. Dist. LEXIS 58311, 2024 WL 1329422, at *6-*7 (D.N.M. 2024)* (finding plaintiff's allegations that Defendants' control over franchisee "by hosting online bookings, requiring the hotels to use corporate reward programs, setting job descriptions, controlling training and policies, instituting a reporting requirement, controlling terms and conditions of employment, and regularly

inspecting hotel facilities" were "sufficient to show an actual agency relationship").

The Wyndham Franchisor Defendants argue that Plaintiff has failed to allege facts sufficient to **[*20]** show the participation element because she "does *not* allege that the Wyndham Franchisor Defendants entered into these franchise relationships for the purpose of promoting or facilitating sex trafficking at the Wyndham Franchised Facilities." (ECF No. 53 at 10 (emphasis in original).) But, the "relevant 'venture' under *Section 1595* need not be 'specifically a sex trafficking venture,' " but can instead be a commercial venture "like running or expanding a business." *G.G. v. Salesforce.com, Inc., 76 F.4th 544, 554 (7th Cir. 2023)*; *see* *F.C. v. Jacobs Solutions Inc., 790 F. Supp. 3d 1158, 1186 (D. Colo. 2025)*. Similarly, RK Hospitality argues that participation under *section 1595* "requires active assistance." (ECF No. 112 at 6.) But as the Court explained above, to participate means "to take part." *Participate*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/participate. To "take part" in something does not necessarily require active assistance. *Cf.* *Ratha v. Rubicon Resources, LLC, 168 F.4th 541, 560 (9th Cir. 2026)* ("Participate" means "to take part," so "one can participate in a venture without operating or managing it.").

RK Hospitality also contests that the incident where B.S. beat Plaintiff at Travel Lodge was enough to show participation, arguing that Plaintiff's isolation from housekeeping does not establish participation. But as the Court will explain below in discussing constructive **[*21]** knowledge, Plaintiff has alleged more than simply isolation from housekeeping. Furthermore, the owner or manager of the Days Inn, which was franchised by the Wyndham Franchisor Defendants, was one of B.S.'s customers who arranged to have sex with Plaintiff. The Days Inn's owner or manager arranging to have sex with a sex trafficking victim clearly satisfies the participation element; contending otherwise would be patently absurd.

Under the third element of a TVPRA claim, Plaintiff's allegations must establish Defendants' actual or constructive knowledge. At various instances, Defendants argue that Plaintiff's burden at the *Rule 12(b)* stage is to allege facts that the Defendants acted with actual knowledge. (*See, e.g.*, ECF No. 53 at 15.) But in doing so, Defendants move the goalposts for how a Plaintiff states a TVPRA claim. True, the TVPRA's criminal provision imparts an actual knowledge standard. *See* *18 U.S.C. § 1591*. By contrast, the plain language of the TVPRA's civil provision states that a defendant "knew or should have known." *18 U.S.C. 1595(a)*. So, the minimal standard needed for a civil claim under the TVPRA is of constructive knowledge, not actual knowledge. Pleading allegations that demonstrate a defendant's actual **[*22]** or constructive knowledge is sufficient at the *Rule 12(b)* stage. Defendants effectively ask the Court to ignore the plain language of the TVPRA—something the Court will not do.

Moreover, many courts considering civil TVPRA claims have held that the applicable mental state is constructive knowledge. *See, e.g.*, *G.G., 76 F.4th at 558* ("To state a claim under *Section 1595*, a plaintiff needs to allege plausibly that the defendant had constructive knowledge that a venture *generally* has violated *Section 1591*.") (emphasis in original); *Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 725 (11th Cir. 2021)* ("Thus, the franchisors may be liable under the TVPRA if they have either actual or constructive knowledge that the venture in which they participated and from which they benefited violated the TVPRA as to the Does."); *c.f.* *J.L., 521 F. Supp. 3d at 1062* ("[P]laintiff is not required to establish an overt act in furtherance of or actual participation in sex trafficking under *§ 1595*."). Indeed, the U.S. Court of Appeals for the Eleventh Circuit explained that the TVPRA's criminal provision has an actual knowledge standard whereas its civil provision has a constructive knowledge standard:

Importantly, the TVPRA's criminal provision,

> *section 1591*, is different from the civil provision, *section 1595*. The criminal provision of the TVPRA makes it a crime to "knowingly" benefit from **[*23]** "participation in a venture," which it defines as "knowingly assisting, supporting, or facilitating" a child to engage in a commercial sex act. *18 U.S.C. § 1591(a)*, *(e)*. The civil provision, on the other hand, can be satisfied by an element of *constructive* knowledge—that a defendant knowingly benefited from "participation in a venture which that person knew or *should have known*" was engaged in sex trafficking. *Id.* *§ 1595(a)* (emphasis added); *Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 724 (11th Cir. 2021)* (explaining the difference between the criminal provision and the civil provision).

*M.H. on behalf of C.H. v. Omegle.com LLC, 122 F.4th 1266, 1273 (11th Cir. 2024)* (emphasis in original).

The Wyndham Franchisor Defendants argue that Plaintiff "does *not* allege that [they] entered into these franchise relationships for the purpose of promoting or facilitating sex trafficking at the Wyndham Franchised Facilities." (ECF No. 53 at 10 (emphasis in original).) But that framing of the Complaint misstates the standard for stating a civil claim under the TVPRA. These Defendants would have the Court construe the TVPRA to require more than both actual knowledge and constructive knowledge of sex trafficking. In effect, it would elevate the required mental state of a TVPRA defendant from acting knowingly to acting purposefully. *See* *Model Penal Code § 2.02* (defining mental states for criminal **[*24]** offenses); *Borden v. United States, 593 U.S. 420, 426, 141 S. Ct. 1817, 210 L. Ed. 2d 63 (2021)* (explaining that mental state of purpose is associated with more culpability than knowledge). In the context of a motion to dismiss, in other words, the Wyndham Franchisor Defendants would place a burden on Plaintiff to allege more than what the TVPRA requires of her in order to state a claim. The Court easily rejects this contention.

Defendants also argue that Plaintiff's allegations are no more than allegations of general knowledge of sex trafficking. "General knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate that Wyndham participated in the trafficking of plaintiff." *J.L., 521 F. Supp. 3d at 1064.*

But Plaintiff has alleged more than general knowledge. In the spirit of judicial restraint, the Court looks to whether Plaintiff has established at least constructive knowledge and does not determine whether Plaintiff's allegations rise to the level of actual knowledge. Defendants at least should have known that they were participating in B.S.'s sex trafficking venture. In the Court's view, the following allegations, which relate to each of the Defendants, establish Defendants' constructive knowledge of the trafficking venture:

- Plaintiff **[*25]** repeatedly refused housekeeping services and isolated herself for long periods of time, per B.S.'s orders, (ECF No. 1 at ¶ 140; *see* ECF No. 75 at 2);

- B.S.'s rooms were littered with sex and drug paraphernalia, (ECF No. 1 at ¶¶ 109(h), 141(h));

- B.S. consistently rented multiple room blocks, (*id.* at ¶¶ 67, 72, 106, 137, 171, 173);

- Hotel surveillance camera footage captured heavy foot-traffic from unregistered male visitors, (*id.* at ¶¶ 109(f), 141(c));

- Plaintiff and other victims appeared drugged and incapacitated with multiple injuries throughout the hotel's public areas, (*id.* at ¶¶ 109(d)-(g), 141(d));

- B.S. was always "obviously armed" on hotel property, (*id.* at ¶¶ 109(b), 141(b); *see id.* at 30); and

- B.S. collected cash from male customers outside of the rooms in the hallways or just outside of the door, (*id.* at ¶¶ 109(c), 141(c)).

At the Rule 12(b) stage, courts observing similar allegations have held they are sufficient to show that a defendant knew or should have known they were participating in a sex trafficking venture. *See, e.g., S.Y. v. Naples Hotel Company, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020)* (collecting cases); *P.C. v. D Fort Hotel, LLC., No. 24-cv-01584-PAB-TPO, 2025 U.S. Dist. LEXIS 20835, 2025 WL 404296, at *5-*6 (D. Colo. 2025)*; *J.G. v. Northbrook Industries, Inc., 619 F. Supp. 3d 1228, 1238-39 (N.D. Ga. 2022)*. Significantly, in addition to the above allegations, there were multiple arrangements for Plaintiff to have sex with the Days Inn's **[*26]** manager or owner. (ECF No. 1 at ¶ 108.) This allegation establishes both constructive knowledge and participation on the Wyndham Franchisor Defendants' part.

These allegations together indicate at minimum, participation and constructive knowledge on the part of the Wyndham Franchisor Defendants and RK Hospitality, that sex trafficking was occurring at their hotels. The Court therefore concludes that in Count One Plaintiff has stated a claim under the TVPRA because her allegations establish the defendants' benefit from participation in a venture that they knew or should have known was engaged in sex trafficking.

**B. Allow States and Victims to Fight Online Sex Trafficking Act (Count Two)**

Plaintiff's FOSTA claim against Defendants arises from events that occurred between 2014 and 2015, but Congress enacted FOSTA in April 2018. The Wyndham Franchisor Defendants, Patel, and RK Hospitality all challenge the retroactive application of FOSTA under Count Two. So, may FOSTA be applied retroactively to allow Count Two to proceed? The Court concludes that no, it may not.

FOSTA makes it a crime for someone to "operate[] an interactive computer service . . . or conspire[] or attempt[] to do so, with **[*27]** intent to promote or facilitate the prostitution of another person." *18 U.S.C. § 2421A(b)*. FOSTA also creates a civil cause of action, allowing "[a]ny person injured by reason of a violation of *section 2421A(b)* [to] recover damages and reasonable attorneys' fees in an action before any appropriate United States district court." *18 U.S.C. § 2421A(c)*.

In *Landgraf v. USI Film Products, 511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)*, the U.S. Supreme Court established a two-step test to determine whether a statute should apply retroactively. First, a court must "determine whether Congress has expressly prescribed the statute's proper reach." *Id. at 280*. *Id.* Second, "the court must determine whether the new statute would have retroactive effect," by evaluating "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* Put differently, the second prong of the *Landgraf* test requires a court to "ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id. at 269-70*. If the statute does have such a retroactive effect, a court follows the traditional presumption against retroactivity, so the statute does not govern. *Id. at 280*.

Defendants rely on the District of Oregon's decision in *A.M. v. Omegle.com, LLC, 614 F. Supp. 3d 814 (D. Or. 2022)*, which the **[*28]** Wyndham Franchisor Defendants characterize as "the primary authority on this issue," to argue that FOSTA should not apply retroactively. (ECF No. 81 at 4.) There, the court held that because FOSTA does not contain any provision governing its retroactive application, "the plain text of the statute does not apply *18 U.S.C. § 2421A* retroactively." *A.M., 614 F. Supp. 3d at 821*. Plaintiff correctly points out that the *A.M*. court never mentioned *Landgraf*. (ECF No. 80 at 2.) Nevertheless, the Court is not bound by *A.M*.; instead, it is *Landgraf* that requires dismissal of Count Two.

Under *Landgraf*, *FOSTA* cannot be applied retroactively. First, FOSTA is silent as to whether it applies retroactively. *See A.M., 614 F. Supp. 3d at*

821 ("[T]he section enacting 18 U.S.C. § 2421A does not contain a similar provision explicitly stating that this provision of the public law was intended to be applied retroactively."). Congress's silence on retroactivity weighs heavily against Plaintiff's position. But the inquiry does not end there.

Second, FOSTA "attaches new legal consequences to events completed before its enactment." *Landgraf, 511 U.S. at 269-70*. For that reason as well, FOSTA cannot apply retroactively. Plaintiff contends otherwise, arguing that sex trafficking was already illegal before FOSTA became law. And Plaintiff is correct that **[*29]** the TVPRA predates FOSTA. But "FOSTA enacted a new federal criminal offense and a new civil cause of action allowing the recovery of attorney fees." *A.M., 614 F. Supp. 3d at 821*; *see* *Woodhull Freedom Found. v. United States, 72 F.4th 1286, 1294, 461 U.S. App. D.C. 425 (D.C. Cir. 2023)* (FOSTA "created *Section 2421A* of Title 18, a brand-new felony offense."). Comparing the statutes makes it clear that a TVPRA offense does not always encompass a FOSTA offense. For instance, a person could "operate[] an interactive computer service . . . to promote or facilitate the prostitution of another person," *18 U.S.C. § 2421A(b)*, all without "knowingly benefit[ing] . . . financially or by receiving anything of value," *18 U.S.C. § 1595(a)*, in doing so.

In other words, knowing financial benefit is an element of the TVPRA but not an element of FOSTA. Thus, to survive a *Rule 12(b)* motion to dismiss, a plaintiff must allege facts to show that the defendant knowingly benefited financially or receiving anything of value under a TVPRA claim but she is not bound by that same burden when stating a FOSTA claim. So, FOSTA makes unlawful conduct that was not necessarily illegal under the TVPRA and it thus cannot be applied retroactively.

While Plaintiff correctly notes that the TVPRA and FOSTA provide the same remedy—allowing successful plaintiffs to recover damages and reasonable attorney's fees—FOSTA **[*30]** attaches that remedy to conduct that was not necessarily previously unlawful. *Compare* *18 U.S.C. § 1595(a)* *with* *18 U.S.C. § 2421A(c)*. Because FOSTA and the TVPRA do not make the same conduct unlawful, Plaintiff's reading of FOSTA would attach new legal consequences despite offering the same remedy. In short, FOSTA and the TVPRA offer the same remedy but for different offenses.

Because FOSTA may not be applied retroactively, the Court need not determine whether Plaintiff has adequately stated a FOSTA claim. Thus, the Court will dismiss Count Two.

### C. Colorado Human Trafficking Statute (Count Three)

Under Colorado law, a human trafficking victim "is entitled to recover damages proximately caused by any person who commits human trafficking for involuntary servitude . . . or human trafficking for sexual servitude . . . ." *Colo. Rev. Stat. § 13-21-127(1)*.

Human trafficking for involuntary servitude occurs when "[a] person . . . knowingly sells, recruits, harbors, transports, isolates, entices, provides, receives, or obtains by any means another person for the purpose of coercing the other person to perform labor or services." *Colo. Rev. Stat. § 18-3-503(1)*. Similarly, human trafficking for sexual servitude occurs when a "person knowingly sells, recruits, harbors, transports, transfers, isolates, **[*31]** entices, provides, receives, or obtains by any means another person for the purpose of coercing the person to engage in commercial sexual activity." *Colo. Rev. Stat. § 18-3-504(1)(a)*.

1. Timeliness

In Colorado, "any civil action based on sexual misconduct, including any derivative claim, may be commenced at any time without limitation." *Colo.*

*Rev. Stat. § 13-80-103.7(1)(a)*. And under this statute, "sexual misconduct" includes "[h]uman trafficking for sexual servitude, as described in *section 18-3-504*." *Colo. Rev. Stat. § 13-80-103.7(2)(b)*. The unlimited timeframe applies to causes of action in two categories: (1) "causes of action accruing on or after January 1, 2022" and (2) "causes of action accruing before January 1, 2022, if the applicable statute of limitations, as it existed prior to January 1, 2022, has not yet run on January 1, 2022." *Colo. Rev. Stat. § 13-80-103.7(1)(b)*.

Before 2022, there was a six-year statute of limitations for "any civil action based on a sexual assault . . . ." *Colo. Rev. Stat. § 13-80-103.7(1)* (2021). The Court is not aware of any Colorado state court that have interpreted whether human trafficking fell under the definition of sexual assault that controlled for the purposes of the 2021 version of *section 13-80-103.7*. Otherwise, Colorado provides a general statute of limitations of two years for "[a]ll other actions of every kind for which no other period of **[*32]** limitation is provided." *Colo. Rev. Stat. § 13-80-102(1)(i)*.

Here, the parties disagree as to whether the unlimited statute of limitations should apply to Count Three. The Wyndham Franchisor Defendants argue that the unlimited timeframe "is inapplicable here as it only applies if the cause of action accrued on or after January 1, 2022, or if the statute of limitations had not yet expired as of that date." (ECF No. 53 at 19 n.9.) Similarly, RK Hospitality argues that "[b]ecause Plaintiff's claims accrued well before January 1, 2022, this statute is not applicable." (ECF No. 112 at 10 n.2.) For those reasons, both the Wyndham Franchisor Defendants and RK Hospitality argue that the claims are time-barred. Plaintiff makes short shrift of Defendants' arguments that the unlimited time to bring suit only applies to actions accruing on or after January 1, 2022. (*See* ECF No. 75 at 11-12; ECF No. 113 at 11.) Indeed, in her brief in opposition to the Wyndham Franchisor Defendants' Motion, she does not mention that the "eliminate[d] time limit[]"applies to actions accruing on or after January 1, 2022. (ECF No. 75 at 11.)

To determine whether the unlimited timeframe applies at all, the Court must first look to whether human trafficking **[*33]** is a "civil action based on sexual misconduct." *Colo. Rev. Stat. § 13-80-103.7(1)(a)*. Because "sexual misconduct" expressly includes "human trafficking for sexual servitude," this analysis can proceed.[3] *Colo. Rev. Stat. § 13-80-103.7(2)(b)*. Neither party disputes that Plaintiff's factual allegations occurred before January 1, 2022, so the Court now evaluates whether "the applicable statute of limitations, as it existed prior to January 1, 2022," had run by that date. *Colo. Rev. Stat. § 13-80-103.7(1)(b)*.

But does the six-year statute of limitations for actions based on sexual assault apply or does the general two-year statute of limitations apply? In the spirit of viewing factual allegations "in the light most favorable to the plaintiff," *Ridge at Red Hawk, 493 F.3d at 1177*, the Court assumes that human trafficking constitutes sexual assault under the 2021 version of *section 13-80-103.7* and that the six-year statute of limitations thus applies to Count Three. But even under this longer statute of limitations, Plaintiff's claims are facially time-barred.

With this pre-2022 six-year statute of limitations in mind, the unlimited timeframe under *section 13-80-103.7* is inapplicable. Assuming Plaintiff's claim under the Colorado Sex Trafficking Law accrued in August 2015, the pre-2022 statute of limitations would have run in August 2021. So, Count Three **[*34]** cannot proceed under the unlimited timeframe because the previous statute of limitations had already run by January 1, 2022.

---

[3] Count Three of the Complaint mentions *Colo. Rev. Stat. § 18-3-503*, which criminalizes human trafficking for involuntary servitude, but not *Colo. Rev. Stat. § 18-3-504*, which criminalizes human trafficking for sexual servitude. (*See* ECF No. 1 at ¶¶ 242-51.) Nonetheless, Plaintiff alleges that "[e]ach Defendant hotel venture knowingly harbored Plaintiff for the purpose of coercing her to perform *sex services*." (*Id.* at ¶ 245 (emphasis added).)

Regardless of which statute of limitations applies to Count Three, the result remains the same: Count Three is time-barred.

2. Equitable Tolling

But the inquiry does not end with the statute of limitations. Instead, the Court must weigh Plaintiff's equitable tolling arguments.

"[E]quity may require a tolling of the statutory period where flexibility is required to accomplish the goals of justice." *Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1096 (Colo. 1996)*. Under Colorado law, courts apply the doctrine of equitable tolling (1) "where the defendant's wrongful conduct prevented the plaintiff from asserting his or her claims in a timely manner," or (2) "where extraordinary circumstances make it impossible for the plaintiff to file his or her claims within the statutory period." *Id. at 1096-97*. Colorado courts recognize that "it is unfair to penalize the plaintiff for circumstances outside his or her control, so long as the plaintiff makes good faith efforts to pursue the claims when possible." *Id. at 1097*. "The extraordinary circumstances basis for applying equitable tolling requires good faith efforts on the part of the plaintiff to pursue his or **[*35]** her claims." *Id. at 1098*.

Here, Plaintiff argues that her "severe psychological trauma, delayed awareness of legal rights, diligent pursuit once informed, and Defendants' concealment" toll the statute of limitations. (ECF No. 75 at 12.) Plaintiff cites *Klamm Shell v. Berg, 165 Colo. 540, 441 P.2d 10 (Colo. 1968)*, to support her argument in support of tolling. But, *Klamm Shell* is inapposite. There, the Colorado Supreme Court held that "a defendant . . . should not be allowed to rely on a statute of limitations, where his intentional tort has caused mental incapacity arising after the cause of action accrued but before the expiration of the period of limitation." *Id. at 545*. By contrast, Plaintiff says that the trauma from the trafficking left her "permanent mental scars," (ECF No. 1 at ¶ 41), and it "fundamentally altered her ability to process information, assess legal options, and recognize her right to seek justice," (*id.* at ¶ 42). Whereas the victim in *Klamm Shell* was incapacitated, Plaintiff does not allege that the trauma incapacitated her. Thus, Plaintiff's allegations of severe psychological trauma are not enough to show the statute of limitations should be tolled.

Plaintiff also argues that her delay was due in part to B.S. because he "instilled a persistent fear of retaliation **[*36]** that continued long after the exploitation ended, discouraging her from taking legal action." (ECF No. 1 at ¶ 51.) But B.S. is not a party to this case. Colorado's equitable tolling doctrine depends on how "the *defendant's* wrongful conduct prevented the plaintiff from asserting his or her claims in a timely manner." *Dean Witter Reynolds, 911 P.2d at 1096* (emphasis added). While B.S. may have prevented Plaintiff from bringing this suit in a timely manner, Plaintiff fails to explain how the Wyndham Franchisor Defendants, Patel, or RK Hospitality have done so. Thus, to prevail on this specific argument, Plaintiff must demonstrate that her fear of B.S. was an extraordinary circumstance sufficient to toll the statute of limitations in this case against these defendants.

More specifically, "Plaintiff was subjected to ongoing threats, intimidation, and coercion by her trafficker, which instilled a persistent fear of retaliation that continued long after the exploitation ended, discouraging her from taking legal action." (ECF No. 1 at ¶ 51.) But these things discouraging her from taking legal action is not the same as them being extraordinary circumstances "making it impossible" for her to have filed her complaint timely.

Plaintiff **[*37]** does allege, however, that "Defendants' active concealment of their participation in and benefit from sex trafficking prevented Plaintiff from discovering their culpability." (ECF No. 1 at ¶ 56.) But that conclusory statement does not supply facts adequate to show that Defendants prevented

Plaintiff from pursuing her claims in a timely manner or that the concealment was an extraordinary circumstance that made it impossible for Plaintiff to pursue her claims in a timely manner.

Plaintiff alleges that she "did not recognize the full extent of her legal rights or the involvement of the Defendants in facilitating her exploitation until recently" and "lack[ed] access to information about her legal rights" because of her trauma. (*Id.* at ¶¶ 53, 56.) Lack of awareness of the law is not the type of extraordinary circumstance warranting equitable tolling. *See Brodeur v. Am. Home Assur. Co., 169 P.3d 139, 150 n.12 (Colo. 2007)* (listing examples of extraordinary circumstances in cases where plaintiff was precluded from timely asserting claims such as closure of courts during wartime, unconstitutional law preventing filing, and plaintiff's internment in prison camp).

For these reasons, Plaintiff has not shown why the statute of limitations should be tolled, and **[*38]** Count Three remains time-barred.

### D. Colorado Tort Claims

The Court discusses the Colorado Tort Claims together because they are all governed by the same statute of limitations. For all the Colorado Tort Claims, there is a two-year statute of limitations. *Colo. Rev. Stat. § 13-80-102(1)(a)*.

Here, that two-year statute of limitations means none of the Colorado Tort Claims can survive because Plaintiff sued Defendants more than two years after the statute of limitations had run. And so, whether these claims survive depends on whether Plaintiff can show that the statute of limitations should be tolled. As with Count Three, the Court has determined that Plaintiff's factual allegations are not sufficient to find that the statute of limitations should be tolled. Thus, because the Colorado Tort Claims are facially time-barred and the corresponding statutes of limitations are not tolled, the Court need not reach the question of whether Plaintiff has stated a claim as to those tort claims.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Wyndham Franchisor Defendants' Motion to Dismiss (ECF No. 53) is GRANTED IN PART and DENIED IN PART as follows:

   a. Plaintiff's FOSTA claim (Count Two) and her claim under *Colo. Rev. Stat. § 13-21-127* **[*39]** (Count Three) against the Wyndham Franchisor Defendants are DISMISSED WITH PREJUDICE;

   b. Plaintiff's Colorado Tort Claims (Counts Four, Five, & Six) against the Wyndham Franchisor Defendants are DISMISSED WITHOUT PREJUDICE; and

   c. The Wyndham Franchisors Defendants' Motion to Dismiss (ECF No. 53) is DENIED in all other respects.

2. Defendant Rileshkumar R. Patel d/b/a Days Inn's Motion to Dismiss Plaintiff's Second Cause of Action (ECF No. 67) is GRANTED and the FOSTA claim (Count Two) asserted against him is DISMISSED WITH PREJUDICE.

3. Defendant RK Hospitality's Motion to Dismiss (ECF No. 112) is GRANTED IN PART and DENIED IN PART as follows:

   a. Plaintiff's FOSTA claim (Count Two) and her claim under *Colo. Rev. Stat. § 13-21-127* (Count Three) against RK Hospitality are DISMISSED WITH PREJUDICE;

   b. Plaintiff's Colorado Tort Claims (Counts Four, Five, & Six) against RK Hospitality are DISMISSED WITHOUT PREJUDICE; and

   c. RK Hospitality's Motion to Dismiss (ECF No. 53) is DENIED in all other respects.

4. As set forth in the Scheduling Order entered by Magistrate Judge Maritza Dominguez Braswell (ECF No. 124), the parties' Joint Status Report remains due on **August 19, 2026**.

Dated this 13th day of August, 2026.

BY THE COURT: **[*40]**

/s/ William J. Martínez

William J. Martínez

Senior United States District Judge

---

End of Document